[No. A053930. First Dist., Div. Five. Jan 29, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL ANGEL REYES, Defendant and Appellant.

---

COUNSEL

Paul Couenhoven, under appointment by Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David D. Salmon and Joanne S. Abelson, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

LOW, J.*—We hold that omission of the definition of aiding and abetting where such instructions were required is not reversible per se, but may be subject to harmless error analysis. We adopt for review of this type of instructional error the limited harmless error analysis outlined in *Carella* v. *California* (1989) 491 U.S. 263 [105 L.Ed.2d 218, 109 S.Ct. 2419], and find the error was harmless on these facts.

Miguel Angel Reyes appeals his conviction for sale or transportation of cocaine (Heath & Saf. Code, § 11352). We affirm.

In December 1990, an undercover officer from the Department of Alcoholic Beverage Control discussed with defendant purchasing cocaine. On January 4, 1991, the officer met defendant at Denny's restaurant in Crescent City. They agreed that the officer would buy one ounce for $1,000, but the officer understood that the exact price would finally be up to another man, who defendant referred to as Miguel. At defendant's direction, the officer followed defendant to a restaurant parking lot at Smith River, where defendant asked for a quarter to call Miguel from a phone booth. He made a call, then told the officer Miguel was on his way. Miguel (whose real name was Melquiades Pascasio Maciel) arrived 10 minutes later and was introduced to the officer by defendant. The officer confirmed with Miguel that the price was still $1,000. Miguel gave him two packages of cocaine and he gave Miguel $1,000. After the sale was complete the three men discussed the sale of a kilo of the same cocaine for $25,500. Defendant also told the officer he

---

*Retired Presiding Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.

could get him better cocaine but it would cost more. Miguel told the officer he could be reached through defendant.

The court instructed the jury, through CALJIC No. 3.00 (5th ed. 1988),[1] that all principals in a crime are considered equally guilty and that principals include "those who aid and abet the commission of the crime." No instruction defining aiding and abetting (such as CALJIC No. 3.01) was given. The Attorney General concedes this was error, but argues it was harmless. ██ ██ Defendant contends, first, that the failure to define aiding and abetting requires reversal without any harmless error analysis, and second, that even if we engage in such analysis we must adopt a very stringent standard of prejudice.

██ Defendant was prosecuted primarily on an aiding and abetting theory, and under the law of accomplice liability the jury should have been required to find that he intended to facilitate or encourage the sale. (*People* v. *Beeman* (1984) 35 Cal.3d 547, 561 [199 Cal.Rptr. 60, 674 P.2d 1318]; CALJIC No. 3.01.) In this context the specific intent required for accomplice liability is in effect an element of the offense, and the error here was equivalent to the omission of an element from the definition of the crime given to the jury.

It does not follow, however, that the error is reversible per se. In *People* v. *Sarkis* (1990) 222 Cal.App.3d 23, 28-29 [272 Cal.Rptr. 34], this precise issue was raised and it was held that the error was not prejudicial per se. We briefly discuss the precedents and reach the same conclusion.

In the wake of United States Supreme Court decisions allowing even instructional errors affecting constitutional rights to be analyzed as harmless (*Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101] [rebuttable presumption of malice in murder case]; *Pope* v. *Illinois* (1987) 481 U.S. 497 [95 L.Ed.2d 439, 107 S.Ct. 1918] [incorrect instruction on element of obscenity charge]), the California Supreme Court has determined that omission of an element from an instruction on a death penalty special circumstance does not require automatic reversal. (*People* v. *Odle* (1988) 45 Cal.3d 386, 414-415 [247 Cal.Rptr. 137, 754 P.2d 184].) In *Odle*, the trial court failed to give any instructions on the special circumstance allegation for murder of a peace officer, but the jury found the allegation true. (*Id.*, at p. 410.) The only disputed element which was not satisfied by any findings on other allegations was the defendant's knowledge or reasonable notice that the victim was a peace officer. (*Id.*, at p. 415.) The Supreme Court held the evidence showed such knowledge or notice "conclusively," and thus that the

---

[1]All further CALJIC references are to the fifth edition.

instructional error was harmless beyond a reasonable doubt. (*Id.*, at p. 416, applying standard of prejudice from *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Although *Odle* involved a special circumstance, not an element of an offense, the court prefaced its discussion of harmless error by noting that the special circumstance factual findings "are no less crucial than those to be found as elements of a crime." (45 Cal.3d at p. 412.)

Our high court has also held harmless error analysis applicable to confusing or conflicting instructions on an element of an offense. (*People* v. *Lee* (1987) 43 Cal.3d 666, 674-676 [238 Cal.Rptr. 406, 738 P.2d 752] [conflicting instructions on intent to kill in attempted murder case].) Even more to the present point, the court has held that *Beeman* error—ambiguous description of the required mental state in the instructions on aiding and abetting— may in a proper case be deemed harmless. (*People* v. *Dyer* (1988) 45 Cal.3d 26, 64 [246 Cal.Rptr. 209, 753 P.2d 1].) Defendant argues *Dyer* is distinguishable in that *Beeman* error does not entirely eliminate the defendant's state of mind as an issue, but merely substitutes knowledge of the perpetrator's unlawful purpose for the correct element, intent to facilitate or encourage the crime; here, he claims, all specific intent has been eliminated from jury consideration. In both cases, however, the central error complained of is the failure to apprise the jury of the need to find that the defendant intended to encourage or facilitate the perpetrator's commission of the crime. In both cases, that is claimed to be the crucial issue erroneously taken from the jury. Whatever abstract distinction can be made it is insufficient to justify a fundamental difference in harmless error analysis.

This court has itself, following *Rose*, *Pope* and *Dyer*, held that omission of instructions on an element of an offense is not reversible per se, but rather may be found harmless on a *Chapman* standard. (*People* v. *Joiner* (1988) 204 Cal.App.3d 221, 224-227 [251 Cal.Rptr. 63] [failure to instruct on penetration in sodomy case].) We conclude that the error here—failure to give CALJIC No. 3.01—is not reversible per se.

■ The remaining question is what limits should be placed on harmless error analysis in this situation. Defendant urges us to employ the strictly limited method outlined in *Carella* v. *California, supra,* 491 U.S. 263. *Carella* dealt with a statutory conclusive presumption that one who retains a rental car for more than five days after scheduled return has embezzled the vehicle. (*Id.*, at p. 264 [105 L.Ed.2d at pp. 220-221].) Determining that this instruction violated the defendant's constitutional rights, the Supreme Court remanded for a determination of prejudice or harmlessness, quoting language from *Rose* to the effect that an unconstitutional presumption could be

harmless if the predicate facts so conclusively establish the ultimate fact that no rational jury could fail to find the ultimate fact even without the instruction. (*Id.*, at p. 266 [105 L.Ed.2d at p. 222].)

In a concurring opinion joined by three other justices, Justice Scalia emphasized that the proper analysis to be used in evaluating the effect of conclusive presumptions was "wholly unlike the typical form of such analysis." (*Carella* v. *California, supra*, 491 U.S. at p. 267 [105 L.Ed.2d at p. 223] (conc. opn. of Scalia, J.).) In the usual case, where the jury is assumed to have considered all the evidence in the record in finding the facts, the reviewing court may, similarly, rely on the overwhelming strength of all the evidence on an issue to find an erroneous instruction on that issue harmless. But where jury consideration of an issue has been erroneously cut off by instruction with a conclusive presumption, the reviewing court may not substitute its own factual findings for those that should have been made by a jury. "If the judge in the present case had instructed the jury, 'You are to apply a conclusive presumption that Carella embezzled the rental car if you find that he has blue eyes and lives in the United States,' it would not matter, for purposes of assuring Carella his jury-trial right, whether the record contained overwhelming evidence that he in fact embezzled the car. For nothing in the instruction would have directed the jury, or even permitted it, to consider and apply that evidence in reaching its verdict. And the problem would not be cured by an appellate court's determination that the record evidence *unmistakably* established guilt, for that would represent a finding of fact by judges, not by a jury. As with a directed verdict, 'the error in such a case is that the wrong entity judged the defendant guilty.' (*Rose* v. *Clark, supra*, [478 U.S.] at [p.] 578.)" (*Carella* v. *California, supra*, 491 U.S. at p. 269 [105 L.Ed.2d at p. 224] (conc. opn. of Scalia, J.).)

In place of the usual overwhelming-evidence-of-guilt analysis, Justice Scalia maintained, a conclusive presumption could be held harmless only if "the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, [so that] making those findings is functionally equivalent to finding the element required to be presumed." (*Carella* v. *California, supra*, 491 U.S. at p. 271 [105 L.Ed.2d at pp. 225-226] (conc. opn. of Scalia, J.); see also *Yates* v. *Evatt* (1991) 500 U.S. __-__ [114 L.Ed.2d 432, 449-450, 111 S.Ct. 1884, 1893-1894 & fn. 10] [explaining differences in harmless error analysis applicable to rebuttable and conclusive presumptions], disapproved on other grounds in *Estelle* v. *McGuire* (1991) 502 U.S. __, __ [116 L.Ed.2d 385, 399, 112 S.Ct. 475, 482, fn. 4].)

We find Justice Scalia's logic persuasive, and agree with defendant that it represents the correct type of harmless error analysis when an instruction

erroneously omits an element of an offense. (See *Hart* v. *Stagner* (9th Cir. 1991) 935 F.2d 1007, 1010-1012 [adopting *Carella* analysis for *Beeman* error]; *Martinez* v. *Borg* (9th Cir. 1991) 937 F.2d 422, 424-425 [same].) Like a conclusive presumption, an instruction which completely omits an element of an offense has the effect of removing any issue as to that element from the jury's consideration. The reviewing court cannot say that the jury found the element to be present on overwhelming evidence in the record, because the jury was not instructed to deliberate upon the issue at all. We can find the error harmless only if other facts necessarily found by the jury are so closely related to the omitted issue that, on this evidence, no rational jury could find one without finding the other.

■ Even under the *Carella* analysis the error here was harmless. Although the instructions completely omitted the element of specific intent to facilitate or encourage, the jury was instructed on criminal intent: "In the crime charged . . . there must exist a union or joint operation of act or conduct and general criminal intent. To constitute general criminal intent it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful." The jury must therefore have found that defendant acted intentionally when he committed the acts which were alleged to constitute the offense: making the arrangements as to quantity and price with the officer, meeting the officer at Denny's and taking him to the transfer point, calling Miguel when they arrived, and introducing the officer and Miguel. It is inconceivable that a jury would have found he did all of these acts intentionally without also finding that in doing so he intended to facilitate or encourage the sale of cocaine.

The defense raised no doubts as to defendant's intent to facilitate or encourage. The only defense was that defendant was acting solely as the agent of the buyer, and had no partnership connection to the seller. This has been termed the "procuring agent" defense, and has not been recognized in California (*People* v. *Cattaneo* (1990) 217 Cal.App.3d 1577, 1583, fn. 2 [266 Cal.Rptr. 710]) although it has been in some other jurisdictions (see, e.g., *People* v. *McGhee* (Colo.Ct.App. 1983) 677 P. 2d 419, 421-422). In California, "one who acts as a go-between or agent of either the buyer or seller clearly may be found guilty of furnishing as an aider and abettor to the seller." (*People* v. *Edwards* (1985) 39 Cal.3d 107, 114, fn. 5 [216 Cal.Rptr. 397, 702 P.2d 555]; see, e.g., *People* v. *Richards* (1961) 198 Cal.App.2d 465, 469-473 [17 Cal.Rptr. 845].) Even where the procuring agent defense has been recognized, it is not applicable when the defendant is alleged to have facilitated, rather than directly perpetrated, a sale: "[T]he procuring agent,

who is a type of 'middleman' or 'broker,' inevitably facilitates the 'sale.' To acquit one who makes more easy or otherwise aids or assists the *purchase* and convict one who facilitates the *selling* would exalt hair-splitting at the expense of common sense and substance . . . ." (*Lewis* v. *United States* (D.C. Cir. 1964) 337 F.2d 541, 545, italics in original.) Defendant's intent to facilitate the sale of cocaine from Miguel to the officer was thus undisputed.

Nothing in this record would have allowed the jury rationally to find that defendant did each of the acts he performed intentionally, and yet find that he did not intend to encourage or facilitate the sale. The failure to give CALJIC No. 3.01 was therefore harmless.

The judgment is affirmed.

King, Acting P. J., and Haning, J., concurred.